J. CHEIN & COMPANY, A CORPORATION, RESPONDENT, v. ROYAL INDEMNITY COMPANY, A CORPORATION, APPELLANT.

Submitted October 27, 1944—Decided January 4, 1945.

For the appellant, *McCarter, English & Egner* (*Augustus C. Studer, Jr.*).

For the respondent, *Osborne, Cornish & Scheck* (*Emanuel P. Scheck* and *Ervin S. Fulop*).

The opinion of the court was delivered by

BODINE, J.   The plaintiff was engaged in business in Harrison, New Jersey.   The defendant had issued to it a policy of insurance to indemnify it for loss occasioned by robbery of money intended for payrolls.

On July 21st, 1942, while the policy was still in force a large sum of money was received for the indicated purpose. Shortly thereafter the office manager Goodman, having receipted for the money, placed it in one of the safes in the office, locking the door and turning the key.   A few minutes later while studying some blueprints with a fellow worker named Schneider, two armed men entered the main office from the anteroom and said, "This is a holdup, fellows." One of them pointed to Goodman and said, "Get up and get the money out of the safe.   Make it snappy."   The other armed man, in the meantime, covered Schneider with a revolver.   Goodman opened the safe, took out the money and gave it to the bandits who, still covering the two office men, disappeared out of the window.   The office was on the second floor.   The street door was locked so the entry was made by means of a ladder brought for that purpose.   There was no armed guard in the office and the money was not to be used till about four-thirty in the afternoon.   It was delivered about one o'clock.

There was proof of prior statements that the money was not placed in the safe but was left on a desk and also that the safe was not locked.   For the purposes of this case the fact question seems not material.

The pertinent provisions of the policy were as follows:

"In consideration of the premium charged for the policy of which this endorsement forms a part, it is agreed that the

insurance hereunder is limited to apply to loss of or damage to money and checks intended solely for the payroll of the insured occasioned by robbery occurring within the premises designated in the declaration.

"It is further agreed that *one* armed guard with no other duties will be on duty within the premises at all times when money and checks, intended for the payroll of the insured, is *exposed* to robbery loss, otherwise this policy shall be null and void."

There was error, we think, in not granting the motion for a nonsuit.

While the payroll was exposed to robbery loss the insured was under a duty to provide one armed guard with no other duties; otherwise the policy became null and void. *Procacci v. U. S. Fire Insurance Co.*, 118 *N. J. L.* 423.

The meaning of the policy was for the court and not for the jury. The payroll, in the absence of an armed guard, was no safer in a safe whether locked or unlocked than it would have been on the desk. It was exposed to robbery loss. It was brought by an armored car and any passerby could observe the occurrence. The employees present were unarmed and had other work to do.

We are not unmindful that a written instrument must be construed most strongly against the one who had it written. The word "exposed" in the policy means no doubt that when the payroll was accessible to one who would take it by armed force there must be an armed guard to protect it. It was certainly so exposed because it took only a short time for those in the office to yield to the bandits' demands. It was open to danger; hence, a guard should have been employed as the policy required.

The motion for a nonsuit should have been granted.

The judgment is reversed, with costs.

*For affirmance*—THE CHIEF JUSTICE, DONGES, WELLS, RAFFERTY, THOMPSON, JJ. 5.

*For reversal*—THE CHANCELLOR, PARKER, CASE, BODINE, PERSKIE, PORTER, COLIE, HAGUE, DILL, JJ. 9.